JUDGE CROTTY

08 CV 4764

228-08/MEU/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
SCOTLINE INC.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Michael E. Unger (MU 0045)

RECEIVED
MAY 21 2008
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SCOTLINE INC.,

     Plaintiff,

 -against-

JAPONICA ENTERPRISES CO. and SECOND-STRAND LTD,

     Defendants.

---

08 Civ _____ ( ___ )

**VERIFIED COMPLAINT**

---

  Plaintiff SCOTLINE INC. (hereinafter "SCOTLINE"), for its Verified Complaint against Defendants JAPONICA ENTERPRISES CO. (hereinafter "JAPONICA") and SECOND-STRAND LTD (hereinafter "SECOND-STRAND"), alleges upon information and belief as follows:

  1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and

Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201, *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1, *et seq.*

2.  At all times material hereto, Plaintiff SCOTLINE was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 280, 521-3rd Street, SW, Calgary, Alberta, T2P 3T3 Canada.

3.  At all times relevant hereto, Defendant JAPONICA was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Trust Company Complex, Ajeltake Road, Majuro, Marshall Islands.

4.  At all times relevant hereto, Defendant SECOND-STRAND was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address c/o Lyncott Enterprises Ltd at Trust Company Complex, Ajeltake Road, Majuro, Marshall Islands.

5.  On or about March 19, 2007, Plaintiff SCOTLINE, as charterer, entered into a maritime contract of charter party with Defendant JAPONICA, as owner, for the use of the M/V STRANGE ATTRACTOR 1 over a period 12 months, 30 days more or less at SCOTLINE's option, at a daily hire rate of $15,470.

6.  Among its other obligations under the charter, Defendant JAPONICA was at all times required to maintain the vessel in good standing with her Classification Society[1] in addition to maintaining the vessel in a thoroughly efficient state in hull, cargo spaces, machinery and equipment, gear for provision, crew, and trading certificates valid for and during the service.

---

[1] A Classification Society is an independent organization charged with ensuring that the vessel fully complies with all applicable international vessel safety conventions and is in all other respects seaworthy.

7. In the event that the vessel was caused to be out of service due to certain events, including deficiency and/or default, breakdown or damages to hull, machinery or equipment, detention because of cargo damages, drydocking for the purpose of examination, or due to any other cause caused by the neglect, act or omission of Defendant JAPONICA, Plaintiff SCOTLINE had the right under the terms of the charter to cease payment of hire for the time lost and to claim for all directly related and fully substantiated expenses and losses.

8. Pursuant to the charter, Plaintiff SCOTLINE also had the right to cease payment of hire in the event the vessel was arrested for the period during which the vessel was detained or unemployed as a result of such arrest, and Defendant JAPONICA was obligated to reimburse SCOTLINE for any costs incurred thereby.

9. In addition, Plaintiff SCOTLINE also had the right under the terms of the charter to cease payment of hire in the event the vessel deviates on a voyage by reasons, including to carry out works pursuant to the quality warranty, to carry out maintenance work or repairs, to undergo dry-docking, or Classification Society surveys. Payment of hire was to cease for the period from the time the vessel deviates until the vessel is at the same or equivalent position and the voyage resumes there from.

10. Pursuant to the charter, JAPONICA was allowed to sell the vessel during the currency of the charter after obtaining SCOTLINE's prior written agreement and approval of the new owners.

11. Defendant JAPONICA delivered the M/V STRANGE ATTRACTOR 1 into the service of Plaintiff SCOTLINE on May 20, 2007. Steel/general cargos were subsequently loaded aboard the vessel at Chinese ports for discharge at Mediterranean ports.

12. On September 10, 2007, at the port of Salerno, discharging operations came to a halt due to the discovery of seawater ingress in cargo holds Nos. 1 and 5. On September 11, 2007, further seawater ingress was discovered in all cargo holds, including Nos. 1, 3, 4, 5, and 6 where SCOTLINE's cargo was stowed.

13. Due to the presence of seawater in the cargo holds, the vessel was detained for court appointed surveyors to ascertain the cause and extent of damage to the cargo and was thereafter duly arrested on September 19, 2007 by local authorities upon application to the local court by the concerned cargo receivers.

14. As a result of the off-hire events at Salerno, time lost at the port amounted to 12.416 days. Hire and costs incurred during that period totaled $213,801.56, the entire amount of which SCOTLINE paid to JAPONICA to avoid interruption of the charter under express reservation of SCOTLINE's right to claim reimbursement of the entire amount.

15. From Salerno, the vessel proceeded to Novorossiysk where she arrived on October 1, 2007 and where SCOTLINE learned that the vessel's Load Line Certificate had expired in breach of the charter which prevented the vessel from loading her next cargo.

16. In further breach of the charter, the vessel remained out of service at Novorossiysk for 28.625 days to undergo substantial repairs necessary to remain in Class.

17. On December 15, 2007, while proceeding to her next employment, at the unilateral direction of JAPONICA in breach of the charter and without advance notice to or consent from SCOTLINE, the vessel deviated to Constanza, Romania, where she remained out of service for 40.8368 days.

18. Shortly prior to the vessel's deviation to Constanza, SCOTLINE first learned that, in breach of the charter, the vessel was to be sold by JAPONICA by virtue of a sale contract

dated November 27, 2007, to an affiliated entity, Defendant SECOND-STRAND LTD, for the purpose of advancing internal needs of certain shareholders, without first obtaining the prior written agreement and consent of SCOTLINE.

19. Pursuant to that sale, Defendants entered into an agreement whereby SECOND-STRAND agreed to take delivery of the vessel together with the balance of the ongoing charter party with Plaintiff SCOTLINE and be bound to the terms and conditions of the charter party. SECOND-STRAND further agreed to guarantee the performance of its obligations under the charter.

20. As a result of the vessel's substantial delay at Constanza, the party to whom SCOTLINE had sub-chartered the ship cancelled the vessel's next employment on January 21, 2008, three days before the vessel was ready to depart Constanza.

21. To mitigate its losses, SCOTLINE was forced to sail the vessel from Constanza to Annaba, Algeria, where the only suitable alternative employment was found.

22. Due to the vessel's deviation, SCOTLINE overpaid hire in the amount of $26,850, none of which has been reimbursed by JAPONICA and/or SECOND-STRAND, despite due demand, and in further breach of the charter.

23. In all, owing to her deviation to Constanza, the vessel was out of the service of SCOTLINE for a period of 47.559 days, from the point of deviation until the vessel returned to an equivalent point *en route* to Annaba, namely a position off Port Said in the Mediterranean.

24. During all relevant times, the daily market rate for the vessel was between $25,000 and $30,000. By taking the average daily rate of $27,500, SCOTLINE experienced lost daily average profits of $12,030 over a period of 75.625 days (equivalent to 28.625 days at Novorossysk plus 47.559 days for the Constanza deviation) or $909,768.75.

25. Accordingly, the return of hire and/or damages claims arising out of SCOTLINE's various breaches of the charter are:

   (a)   $213,801.56 for overpaid hire at Salerno;
   (b)   $26,850 for overpaid hire due to Constanza deviation; and
   (c)   $909,768.75 for lost profits at Novorossysk and due to Constanza deviation

for a total of $1,150,420.31, all of which remains due and outstanding to SCOTLINE under the charter.

26. The M/V STRANGE ATTRACTOR 1 is soon to be sold to a Chinese buyer and payment is expected to be made to Defendant(s) JAPONICA, SECOND STRAND and/or to one of its affiliated entities, non-party Lyncott Enterprises Ltd.

27. The charter party provides at clause 55 for the application of English law and for disputes between the parties to be resolved by arbitration in London, and SCOTLINE specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has been commenced and SCOTLINE's Claim Submissions served.

28. This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for Plaintiff SCOTLINE's claims made or to be made in the London arbitration under English law, as agreed by the parties.

29. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

30. Plaintiff SCOTLINE estimates, as nearly as can presently be computed, that the legal fees and costs of prosecuting its claims in London arbitration will be $200,000. Interest anticipated to be awarded is estimated to be $171,276.63 (calculated at the rate of 7% per annum

compounded quarterly for a period of two years, the estimated time for completion of the proceedings in London).

31. In all, the claim for which Plaintiff SCOTLINE sues in this action, as near as presently may be estimated, totals **$1,521,696.94**, no part of which has been paid by Defendants JAPONICA and SECOND-STRAND, despite due demand. Plaintiff SCOTLINE specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure SCOTLINE.

### Request for Rule B Relief

32. Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff believes that Defendants have, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant(s) JAPONICA ENTERPRISES CO. and/or SECOND-STRAND LTD (collectively hereinafter, "ASSETS"), including but not limited to funds transferred in the name of non-party Lyncott Enterprises Ltd in connection with the sale of the M/V STRANGE ATTRACTOR 1, including but not limited to ASSETS in their individual names and/or being transferred for their individual benefits, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

33.    The total amount sought to be attached pursuant to the above is **$1,521,696.94**.

WHEREFORE, Plaintiff SCOTLINE INC. prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendants citing them to appear and answer the foregoing;

b.    That if Defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants up to and including **$1,521,696.94** be restrained and attached, including but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant(s) JAPONICA ENTERPRISES CO. and/or SECOND-STRAND LTD, including but not limited to funds transferred in the name of non-party Lyncott Enterprises Ltd in connection with the sale of the M/V STRANGE ATTRACTOR 1, including but not limited to ASSETS in their individual names and/or being transferred for their individual benefits, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the Defendants in the London proceedings; and

d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       May 21, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
SCOTLINE INC.

By: _____
    Michael E. Unger (MU 0045)
    80 Pine Street
    New York, NY 10005
    (212) 425-1900
    (212) 425-1901 (fax)

## **ATTORNEY VERIFICATION**

State of New York      )
                       ) ss.:
County of New York  )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
21st day of May, 2008

_____
Notary Public
MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/10